**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:14-CV-00193-GCM**

| | | |
|---|---|---|
| T2 PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ADVANTUS CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.    INTRODUCTION

This matter is before the Court upon Defendant's Motion to Dismiss or to Transfer for Improper Venue, or in the Alternative, Motion to Decline to Exercise Jurisdiction. (Doc. No. 3). This Motion has been fully briefed and is now ripe for disposition.

## II.    FACTUAL BACKGROUND

Plaintiff T2 Products, LLC ("T2") is in the business of selling pool floats, including the "Maggie Blue" pool floats at issue in this lawsuit.  Defendant Advantus Corp. ("Advantus") is a Florida corporation and is the exclusive licensee of a patent for a certain type of buoyant cushion (the "Buoyant Cushion Patent") and has marketed and sold pool floats embodying the Buoyant Cushion Patent throughout the United States.

In early 2013, Advantus became aware that T2 was selling products that infringed the Buoyant Cushion Patent.  After the parties failed to resolve the matter without litigation, Advantus filed suit against T2 in the Middle District of Florida alleging patent infringement (the "2013 Florida Suit").   The parties ultimately settled; however, in conjunction with the settlement, the district court entered a permanent injunction against T2 and "all of its agents,

successors, assigns, and persons in active concert or participation with any of them," enjoining

them from "manufacturing, distributing, selling, offering for sale, and/or advertising" the

"Spuncrylic & Mesh" and "Sunbrella & Mesh" versions of the Maggie Blue pool floats.  (Ex. 2

at 5–6, Doc. No. 3-2.)[1]

As part of the settlement of the 2013 Florida Suit, the parties entered into a sublicense

agreement ("Sublicense"), which permitted T2 to sell certain Buoyant Cushion Products in

limited circumstances.  (Advantus' Mot. Dismiss or Transfer at 3, Doc. No. 3.)  Under the

Sublicense, T2 agreed to not, directly or indirectly:

    (i)     Import, use, make, have made, sell or offer to sell any Sublicense Products in any way or manner whatsoever except in strict compliance with this Agreement.

    (ii)    Import, use, make, have made, sell or offer to sell any Buoyant Cushion Products within the United States, except to the extent that the sale of such products is explicitly authorized under Schedules A, B, or C.

(Ex. 3 at 6, Doc. No. 3-3.)  Under Schedule C of the Sublicense, Advantus authorized T2 to sell

to Costco the Maggie Blue Buoyant Cushion Products that are 70" by 32" in size and sold at a

minimum retail price of $89.  (*Id.* at 15.)  The Sublicense contains a mandatory, exclusive venue

provision requiring any litigation arising out of the agreement to take place in the Middle District

of Florida.

Advantus recently discovered that T2 had sold Costco an item which depicts the

approved Maggie Blue product on the box, but the actual product inside the box is a different

product that does not conform to Schedule C of the Sublicense.  As a result, on April 11, 2014,

Advantus sent a letter to Todd Youngblood, President of T2, notifying him that the sales of the

Maggie Blue floats were in violation of the Federal Lanham Act, 15 U.S.C. § 1125(a).  (Ex. 5,

Doc. No. 3-5.)  Particularly, the letter informed Mr. Youngblood that T2 was engaging in false

---

[1] T2 subsequently violated the injunction and the court conducted a sanctions hearing.

advertising by selling Costco an item which depicted the approved Maggie Blue product on the box, while the actual item inside the box was a different, inferior product that did not conform to Schedule C of the Sublicense.  (*Id.*)  The letter explicitly threatened litigation if T2 failed to propose an acceptable plan of reconciliation within seven days. (*Id.*)  On April 14, 2014, in response to the demand letter, Mr. Youngblood emailed Advantus' President, Kevin Carpenter, requesting that they discuss the issue directly. (Ex. 6 at 11, Doc. No. 3-6.)  Mr. Carpenter responded on the same day, requesting a written proposal and reiterating an intent to litigate absent a resolution. (*Id.*)  On April 20, T2 filed the present declaratory judgment action, seeking a declaration from this Court that it has not engaged in false advertising under the Lanham Act. T2 did not, however, serve the Complaint, but instead continued to make settlement overtures to Advantus.

On April 24, 2014, Advantus filed suit against T2 in the Middle District of Florida alleging breaches of the Sublicense as well as federal and state law causes of action for unfair competition, false advertising, and deceptive trade practices.  The Complaint was served on T2 the day after it was filed. The case is now pending as *Advantus, Corp. v. T2 International, LLC, and T2 Products, LLC, Case No. 3:14-CV-00484-BJD-PDB*.  (the "Advantus 2014 Florida Suit"). [2]

Also on April 24, Mr. Youngblood emailed Mr. Carpenter stating that he was out of the country but would present a settlement by April 29. (Ex. 6 at 10, Doc. No. 3-6.)  The email did not mention the Complaint T2 had filed, but not served.  The following day Mr. Youngblood emailed Mr. Carpenter a copy of the Complaint T2  had filed on April 20, but stated that he did not intend to serve the Complaint:

---

[2]  On April 29, 2014, Advantus also moved for sanctions in the 2013 Florida Suit for violations of the Permanent Injunction, and sought consolidation of the 2014 Florida Suit with the 2013 Florida Suit.  The motion to consolidate was granted.

"We wish to avoid further litigation on this matter and come to a reasonable settlement quickly. However we have taken steps to protect our rights to sell our products that our customers around the world purchase from us. **Attached is a copy of the complaint we filed in Charlotte on Sunday. We do not intent [sic] to serve this to you**, we would far prefer a quick reasonable settlement."

(*Id.*) (emphasis added)

Advantus has filed the present motion seeking dismissal or transfer of T2's declaratory action, arguing that it falls within an exception to the first-filed rule, and because the mandatory, exclusive venue provision of the Sublicense requires this litigation to take place in the Middle District of Florida.

### III.    DISCUSSION

Where the same parties have filed similar lawsuits in different federal fora, doctrines of federal comity generally provide that the matter should proceed in the forum where the action was first-filed. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip., Inc.,* 286 F.3d 581, 694-95 (4th Cir. 2004)*; Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). Courts use three factors in determining whether to apply the first-filed rule: 1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake. *Nutrition & Fitness, Inc.,* 264 F. Supp. 2d at 360. Applying the factors to be considered, the Court finds that the first-filed rule is applicable herein. This case was filed four days prior to the Florida suit, the parties are identical, and both suits involve the same subject matter.

Courts have applied an exception to the first-filed rule where "special circumstances" exist, such as forum shopping, anticipatory filing, or bad faith filing. *Id.* If the court determines that an exception applies, then the "court may stay its proceedings,

4

dismiss the case entirely, or transfer the case to its sister court." *Id.* "The forum shopping exception [to the first-filed rule] typically applies to actions for declaratory judgment." *St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp*., Nos. 3:09CV476-RJC-DSC, 3:09cv511-RJC-DCK, 2010 WL 2465543, at *3 (W.D.N.C. June 14, 2010); *See also Factors Etc., Inc. v. Pro Arts, Inc*., 579 F.2d 215, 219 (2d Cir. 1978) (an improper anticipatory declaratory judgment action will preclude application of the first-filed rule); *Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.,* No. 3:10-CV-278, 2011 WL 148264 (W.D.N.C. 2011) (ordering transfer of first-filed, defensive declaratory action when first-filing party was on notice that lawsuit was imminent). The *Family Dollar* court identified two circumstances that may merit a deviation from the first-filed rule: (1) "[W]hen the first-filed action is for declaratory judgment, a closer look is warranted because 'such an action may be indicative of a preemptive strike than a suit for damages or equitable relief'"; and (2) "[A] red flag is raised when the party that filed first was on notice that a lawsuit was imminent." *Id*. at *4, quoting Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993). Moreover, "[D]isputes regarding the first-filed rule generally involve some settlement negotiations between the parties, whereupon one of the parties files a lawsuit without serving the other party, all the while continuing negotiations." *Nutrition & Fitness, Inc.*, 264 F. Supp. 2d at 361.

T2 knew that Advantus intended to immediately proceed with litigation if settlement negotiations were unsuccessful. The demand letter sent by Advantus on April 11, 2014 explicitly threatened litigation if T2 failed to propose an acceptable plan of reconciliation within seven days. Advantus had previously sued T2 in the Middle District of Florida to enforce its rights following T2's failure to comply with a 2013 cease and desist letter, so it is

reasonable to assume that T2 considered the litigation threat credible.  Further, Advantus'
president made it clear in an email sent on April 14 to Mr. Youngblood that absent a
meaningful written proposal Advantus would institute litigation.  When T2 filed its declaratory
judgment action on April 20, aware that litigation was imminent, it was clearly racing to the
courthouse.

T2's filing of this anticipatory declaratory action in its own forum without  serving
Advantus, or even initially mentioning to Advantus the existence of this lawsuit,  evidences
that T2 was merely trying to control the forum and not actually seeking relief. Under  such
circumstances, the Fourth Circuit does not "place undue significance" on the fact that a
declaratory action was filed first in a "race to the courthouse door, particularly …where
[the  declaratory plaintiff] had constructive notice of [the opposing party's] intent to sue."
*Centennial  Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996).

The "timing of the lawsuit should generally be left to the injured party, not the
potential  tortfeasor." *North American Roofing Services, Inc. v. BPP Retail Properties*, *LLC*,
No. 1:13-CV-000119-MR-DLH, 2014 WL 1092319, at *7 (W.D.N.C. Mar. 18, 2014)
(applying exception to first-filed rule, declining to exercise jurisdiction over anticipatory
declaratory action, and dismissing first-filed declaratory action); *See also Klingspor Abrasives,
Inc. v. Woolsey*, No. 5:08CV152, 2009  WL 2397088, *4 (W.D.N.C. Jul. 31, 2009) (explaining
that "[a] declaratory suit ... cannot be used  to deprive ... the natural plaintiff ... the right to
choose the time and forum to settle ... [s]uch suits  will not be condoned," and dismissing
declaratory action).

Further, where the first-filed lawsuit does not bring the true dispute between the
parties  before the court, this "speaks volumes" as to whether forum fencing has occurred and

the court should ignore the first-filed rule. *Nutrition & Fitness,* 264 F.Supp. 2d at 364. This factor is likewise present here because T2's action herein only addresses a small portion of the full dispute between the parties. T2 has merely asked this Court to rule that it has not committed false advertising under the Lanham Act by depicting a Maggie Blue float with a mesh bottom for sale on its packaging, but actually enclosing a Maggie Blue float without the mesh bottom in the actual product offering. T2's request for declaratory relief does not mention that the Middle District of Florida previously has entered a Permanent Injunction preventing T2 from even offering to sell the Maggie Blue float with a mesh bottom at all. This action also does not address the Sublicense, which allows to T2 to offer to sell the mesh bottom Maggie Blue float only if it strictly complies with the Sublicense terms, which Advantus alleges has not occurred here. The parties' disagreements therefore are much broader than merely a question of whether T2 has engaged in false advertising, but instead will involve construction of the Middle District of Florida's Permanent Injunction. Moreover, if this Court did not transfer venue Advantus would be forced to file its claims under the Sublicense as compulsory counterclaims, despite the mandatory exclusive venue clause requiring the venue for such a dispute in the Middle District of Florida.

After consideration of the law and the circumstances of this case, the Court finds that T2 filed this anticipatory action in an attempt to control the forum. Accordingly, special circumstances exist for deviating from the first-filed rule and transferring this case to the Middle District of Florida.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or to Transfer for Improper Venue, or in the Alternative, Motion to Decline to Exercise Jurisdiction. (Doc. No. 3) is hereby GRANTED to the extent that this case shall be transferred to the United States

District Court for the Middle District of Florida.

Signed: August 21, 2014

Graham C. Mullen
United States District Judge